COOK v DEPARTMENT OF TREASURY

Docket No. 55941. Argued June 3, 1975 (Calendar No. 3).—Decided April 1, 1976. Rehearing denied 396 Mich 992.

Wendell J. Cook and Lucille K. Cook brought an action for refund of state income taxes when the Department of Treasury disallowed a tax exclusion for a lump-sum payment received by Wendell Cook on February 1, 1968, from an employees' profit-sharing trust. Ingham Circuit Court, Ray C. Hotchkiss, J., denied the refund and the Court of Appeals, McGregor, P. J., and R. B. Burns and R. L. Smith, JJ., affirmed (Docket No. 17579). Plaintiffs appeal. *Held:*

1. When the lump sum was paid to Wendell Cook, income was realized and taxable. Under the terms of the trust agreement, Cook had provided all the services necessary for 100% vesting of his interest in the profit-sharing fund and retirement or refraining from committing various felonies, such as theft and embezzlement, are not valuable services as yet unrendered to Cook's employer such that the trust interest was not vested.

2. The part of Cook's interest in the profit-sharing trust which was 100% vested prior to October 1, 1967, is an "asset acquired" before that date for purposes of an exclusion under the former provision of § 271 of the Income Tax Act, MCL 206.271; MSA 7.557(1271). The exchange of Cook's vested interest in the trust for the lump sum satisfies the disposition requirement for the exclusion.

3. The taxable portion of the proceeds from disposition of the asset is computed from the ratio of the number of months from the effective date of the Income Tax Act until the date of disposition of the asset to the number of months from the date of acquisition of the asset to the date of disposition. The interest is "acquired" when the employee's interest cannot be defeated by the sole action of the employer *(e.g.,* discharge), in this case at the rate of 4% per year. The interest in the profit

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 33 Am Jur 2d, Federal Taxation ¶¶ 3451 *et seq.*
Distributions to employee from pension or profit-sharing plans as taxable, under § 402 of the 1954 Internal Revenue Code (26 USC § 402), as ordinary income or as capital gain. 3 ALR Fed 719.

sharing plan was acquired over the 25-year vesting period and acquisition was not deferred until the interest was 100% vested in 1966. The proportion of gain or loss should be separately determined as to each 4% segment from the date that 4% segment was vested. Plaintiffs are entitled to a refund for taxes paid on the balance of the proceeds.

53 Mich App 228; 218 NW2d 861 (1974) reversed.

1. TAXATION—INCOME TAX—PROFIT-SHARING TRUSTS—LUMP-SUM PAYMENT.

Income to an employee was realized and taxable when a lump-sum payment of his interest in a profit-sharing trust was made to him.

2. TAXATION—INCOME TAX—"ASSET ACQUIRED"—PROFIT-SHARING TRUSTS—VESTED INTEREST.

A taxpayer's interest in a profit-sharing trust was a vested interest and where it was 100% vested before October 1, 1967, was an "asset acquired" for purposes of obtaining an exclusion under the former provisions of the Income Tax Act when the taxpayer had performed all of the services necessary for vesting his interest under the trust agreement although payment would be made only upon retirement or honorable termination from employment (MCL 206.271; MSA 7.557[1271]).

3. TAXATION—INCOME TAX—"ASSET ACQUIRED"—"DISPOSITION"—PROFIT-SHARING TRUSTS—VESTED INTEREST.

The exchange of an employee's vested interest in a profit-sharing trust for a cash lump-sum payment was a "disposition" of an "asset acquired" within the meaning of a former provision of the Income Tax Act allowing exclusion of a part of the income from disposition of an asset acquired before January 1, 1968 (MCL 206.271; MSA 7.557[1271]).

4. TAXATION—INCOME TAX—"ASSET ACQUIRED"—PROFIT-SHARING TRUSTS.

An interest of an employee in a profit-sharing trust is "acquired" when it cannot be defeated by the sole action of the employer *(e.g.,* discharge) within the meaning of a former provision of the Income Tax Act allowing exclusion of a part of the income from disposition of an asset acquired before January 1, 1968 (MCL 206.271; MSA 7.557[1271]).

*Fraser, Trebilcock, Davis & Foster* (by *James A. Park)* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard R. Roesch* and *John W. Jackson, Jr.,* Assistants Attorney General, for defendant.

LINDEMER, J. This is an appeal in an action for refund of state income taxes. Wendell Cook received a lump-sum payment of $173,032.55 on February 1, 1968, from the Michigan National Bank Employee's Profit Sharing Trust. From this amount, pursuant to MCLA 206.271; MSA 7.557(1271), plaintiff (Lucille Cook filed the subject joint return with Wendell and is included in the term "plaintiff") attempted to exclude $158,680 as "assets acquired" prior to the effective date of the Michigan income tax. When the Revenue Division of the Michigan Department of Treasury ("Treasury") disallowed the exclusion, this action followed. The Court of Appeals upheld the Ingham Circuit Court's judgment denying plaintiff's refund and upholding defendant Treasury's disallowance of a tax exclusion claimed under § 271. 53 Mich App 228; 218 NW2d 861 (1974).

The statute, prior to the 1969 amendment, read:

"(1) A taxpayer subject to the tax levied by section 61 or 71 and whose income received after December 31, 1967 is increased or diminished by the disposition of an asset acquired before January 1, 1968 may elect to recompute taxable income by excluding therefrom the proportional gain or loss incurred prior to January 1, 1968. Taxpayers so electing shall be subject to a tax on taxable income thus recomputed at the rates imposed by this act. An election so made shall include all items of gains or losses realized during the taxable year.

"(2) The proportion of gain or loss occurring after December 31, 1967, to total gain or loss is equal to the proportion the number of months after December 31,

1967, to date of disposition bears to the number of months from date of acquisition to date of disposition.

"(3) A taxpayer subject to the tax levied by section 51 shall substitute for the dates contained in this section the appropriate dates that bear the same relation to October 1, 1967, as the dates in this section bear to January 1, 1968." 1967 PA 281, § 271.

The subject profit-sharing trust contains the following relevant provisions:

"1. The Michigan National Bank, hereinafter sometimes referred to as the Bank, desires to share a portion of its profits with members of its staff in recognition of loyal, faithful and efficient service to the Bank, and desires to stimulate a keen interest among all of its staff members in the efficiency, prosperity and well-being of the Bank by assuring them that when they have attained three consecutive calendar years of full time employment with the Bank, they will share thereafter in the profits of the Bank as provided in the following paragraphs.

"2. The Bank shall set up as of December 31 of each year a 'Profit Sharing Account' equal to 15% of the regular annual even one hundred dollars of salary being paid to the eligible and participating staff members as of December 31 of the current calendar year, provided that the net earnings of the Bank, after all deductions for the current year including said Profit Sharing Account payment, and excluding Transfers to Reserve for Losses on Loans, Transfers to Any Other Contingent Reserve Accounts, Preferred Stock Dividend and Common Stock Dividend, is 8% or more of the current annual average of Capital Funds including Reserve for Losses on Loans and transfers to Any Other Contingent Reserve Accounts, said average to be computed as between such funds at the beginning and the close of the current year. [It is stipulated that no year's contribution has ever been missed.]

"3. The balance in the 'Profit Sharing Account' as provided in Paragraph 2, if any, shall be paid to the

Trustees of the 'Michigan National Bank Profit Sharing Trust', on December 31 of the current year.

"4. All staff members of the Michigan National Bank or of a bank or other organization taken over by the Bank, with three or more consecutive calendar years of full time employment with said organizations as of the end of each current calendar year after the effective date of this Agreement will be eligible and shall participate in the 'Michigan National Bank Profit Sharing Trust Account' in accordance with the cumulative number of units to his or her credit, based each year on one unit for each full one hundred dollars of regular annual salary as of December 31 of the current calendar year. A staff member ledger record will be maintained for each eligible staff member, showing the units credited each year, and the cumulative number of units to his or her credit. The staff member's interest in the unallocated portion of the 'Michigan National Bank Profit Sharing Trust Account' is based on the amount that the dollar value of his or her cumulative number of units have earned from the first year of participation in the Profit Sharing Trust to December 31, of the last calendar year of full time employment of such staff member. The current market value of the net assets of the 'Michigan National Bank Profit Sharing Trust Account' will be computed, and the value of each unit established for the purpose of necessary payments as hereinafter provided, and for a regular report to the participating staff members on December 31 of each year.

"5. Each staff member included in the 'Michigan National Bank Profit Sharing Trust Account' shall have a vested interest of 4% of his or her cumulative unit account for each calendar year of continuous full time employment with the Bank, or with a bank or other organization taken over by the bank commencing January 1, 1941, except in case of regular retirement on pension, death or permanent and total disability; in such cases he or she will have 100% vested interest. Any interest of a staff member in the Trust not vested in such staff member at the time of separation of employment of such staff member shall revert to the 'Michigan National Bank Profit Sharing Trust Account'.

"6. (a) In case of severance of employment due to regular retirement on pension or to permanent and total disability of the participating staff member, when such permanent and total disability is certified to the Trustees in writing by a medical doctor, benefits shall be paid to the participating staff member in one single payment out of the 'Michigan National Bank Profit Sharing Trust Account' according to his or her interest as provided in Paragraphs 4 and 5 with such payment to be made not earlier than sixty (60) days after such severance of employment.

\*    \*    \*

"8. In the event the employment of a participating staff member is terminated for cause due to defalcation, theft, embezzlement, falsification of Bank records, or any crime constituting a felony, or if the Bank certifies to the Trustees within 60 days from the date of death, retirement or termination of employment that such cause for termination then existed, the staff member, his or her designated beneficiary or beneficiaries, and his or her heirs, distributees and legal representatives will thereby forfeit all rights and interests in and to any benefits of the Trust then standing to the credit of the staff member's account and such credit shall revert to the 'Michigan National Bank Profit Sharing Trust Account'.

\*    \*    \*

"11. All disputes regarding the rights of any person entitled to any benefits of the Trust, including the right of any staff member to be considered eligible to participate in the Trust, will be submitted to the Trustees for determination and their determination will be final, conclusive and binding.

"12. No part of the corpus or income of the Trust shall at any time revert to or in way become the property of the Bank, nor shall such trust funds be used, directly or indirectly, for any purpose whatsoever other than the exclusive benefit of the eligible staff members or their estates. Other provisions of this Agreement may be amended by the Trustees, with the approval of the Board of Directors of the Bank.

"13. It is the intention of the Bank to continue this

Trust permanently for the benefit of staff members of the Bank but the right is reserved by the Bank to terminate it at any time by action of the Board of Directors of the Bank. If the Trust is terminated the unallocated assets of the Trust will be distributed to each participating staff member according to his or her interest as provided in Paragraph 4 adjusted to final liquidated value of the Trust.

"14. The 'Michigan National Bank Profit Sharing Trust Account' is intended to meet the requirements of Section 401(a) of the Internal Revenue Code and therefore be exempt from Federal taxes on its income. Contributions to the 'Michigan National Bank Profit Sharing Trust Account' will be subject to the limitations set forth in Section 404(a) of the Internal Revenue Code and therefore the amount to be credited to the 'Michigan National Bank Profit Sharing Trust Account' will be reduced to the extent necessary in any year to provide the maximum contributions for such year within such limitations."

*   *   *

Plaintiff's 100% vested interest on December 31, 1966, had a total dollar value of $158,680. (No amount for 1967 became vested prior to October 1, 1967, since the vesting was not effected until December 31, 1967.) The value of plaintiff's interest in the trust fund as of February 1, 1968, was $173,032.55.

The Court of Appeals did not err in applying *Wackerman v Michigan,* 47 Mich App 228; 209 NW2d 493 (1973), holding that when the sum of $173,032.55 was paid plaintiff herein, income was realized and taxable. There could be no § 271 exclusion unless the payment increased plaintiff's income. It did err in holding that the § 271 exclusion was not available to the plaintiffs.

The question of whether plaintiff's 100% vested interest in this profit-sharing trust falls within the § 271 exclusion is not answered by the Michigan

Income Tax Act. In Michigan, "presumptively tax laws are intended to have a prospective operation only * * * ". *Fuller v Grand Rapids,* 40 Mich 395, 396 (1879). We are unable to accept the Court of Appeals argument that plaintiff's interest is so contingent as to not be his. Plaintiff's right to possession triggered the taxable event, *Wackerman, supra,* but possession is not ownership. Pursuant to paragraph 5 of the trust agreement, plaintiff had provided all the services necessary for 100% vesting. We cannot say that retirement or refraining from various felonies (such as theft and embezzlement) are valuable services rendered plaintiff's employer such that plaintiff's trust interest was not yet his.

In so holding, we recognize that plaintiff's state tax treatment will vary from his Federal tax treatment. Section 271 provides a barrier, beyond which the state's taxing power is not to extend. This barrier was established because an income tax had just been imposed. To assume parallel treatment is mandated in situations which are not parallel is unwarranted. When an employee's interest in a profit-sharing trust was 100% vested prior to October 1, 1967, it is an "asset acquired" for Michigan income tax deduction purposes under the unamended § 271.

Since plaintiff's 100% vested interest was an asset acquired, the exchange of that interest for the cash he received satisfies the "disposition" requirement of the statute, contrary to the Court of Appeals holding.

The interest is "acquired" when the employee's interest cannot be defeated by the sole action of the employer *(e.g.,* discharge), that is, the interest is acquired as it vests, in this case at the rate of 4% per year. The asset here, an interest in a

profit-sharing plan, was thus acquired ratably over the 25-year vesting period; acquisition was not deferred until the interest became 100% vested in 1966.

The amount to be excluded from income should be determined by excluding the effect of post-October 1, 1967 employer contributions; such contributions and appreciation or depreciation attributable thereto are fully taxable to the taxpayers.

A § 271 computation should be made as to the amount remaining after deducting the amount so fully taxable. The proportion of gain or loss occurring after October 1, 1967 to the total gain or loss should be separately determined as to each 4% segment from the date that 4% segment was vested.

Having determined that an exclusion is available pursuant to § 271, subsections 1 and 3, subsection 2 provides the mechanism for recomputation. The taxable portion of the proceeds from disposition of the asset ($158,680) is described by the following ratio:

$$\frac{\text{From day before effective date of tax to date of disposition.}}{\text{From date of acquisition of asset to date of disposition.}}$$

The decisions of the Court of Appeals and the Circuit Court are reversed and cause is remanded to the circuit court for entry of an order awarding plaintiff a refund calculated according to the guidelines of this opinion. Costs to plaintiffs-appellants.

KAVANAGH, C. J., and LEVIN, COLEMAN, and FITZGERALD, JJ., concurred with LINDEMER, J.

WILLIAMS, J., concurred in the result.

RYAN, J., took no part in the decision of this case.