73 Mich. App. 526 (1977)
252 N.W.2d 837
FREMONT MUTUAL INSURANCE COMPANY
v.
DEPARTMENT OF TREASURY
Docket No. 26306.
Michigan Court of Appeals.
Decided February 2, 1977.
*527 Reber & Reber, for plaintiff.
Frank J. Kelley, Attorney General, Robert A. Derengoski, Solicitor General, and Richard R. Roesch and John W. Jackson, Assistants Attorney General, for defendant.
Before: D.E. HOLBROOK, P.J., and ALLEN and D.C. RILEY, JJ.
ALLEN, J.
Are insurance premiums collected by a mutual insurance company in 1965 prior to the enactment of Michigan's corporate income tax but, by virtue of a special provision of the Internal Revenue Code (IRC) not taxed by the Federal government until 1970, subject to the Michigan income tax in 1970? This novel issue of first impression arises on the following facts.
Michigan's corporate income tax became effective January 1, 1968. MCLA 206.499(1); MSA 7.557(1499)(1). In 1965, pursuant to § 824 of the IRC,[1] plaintiff placed some $16,000 of 1965 premium revenue in a so-called Protection Against Loss (PAL) account.[2] Section 824 is a special provision *528 affecting mutual insurance companies. It provides that a portion of underwriting revenues in any one year may be set aside for a five-year period for the purpose of paying policyholder claims. Any portion of the funds set aside which still remains in the PAL account five years later is taxable income in the fifth year.
In 1970, $11,789.82 of the original $16,000 remained in the 1965 PAL account and was duly reported as income on plaintiff's 1970 Federal tax return. However, in filing its 1970 Michigan tax return, plaintiff reduced its reported income by the same $11,789.82 amount. When defendant disallowed the reduction and increased plaintiff's state tax by $660.23, plaintiff paid the additional tax under protest and filed suit in the Ingham Circuit Court for a refund. MCLA 206.421; MSA 7.557(1421). On October 30, 1975, judgment was entered in favor of plaintiff. It is from this judgment that defendant appeals. Though the amount of deficiency is small, the principle involved is significant and several cases involving the taxability of 1966 and 1967 PAL accounts await the decision in this case.
The Department of Treasury argues that since the revenue in question was not recognized as income for Federal tax purposes until 1970, it was also subject to the Michigan tax in 1970. Plaintiff argues that the revenue was received, earned or otherwise acquired in 1965 and, hence, is not subject to taxation by the state in 1970. The trial judge adopted plaintiff's position, stating that defendant's *529 action constituted retroactive taxation.[3] In support of its position, defendant strongly relies upon two recent decisions of this Court, Production Credit Associations v Department of Treasury, 68 Mich App 409; 242 NW2d 794 (1976), and Michigan Consolidated Gas v Department of Treasury, 72 Mich App 426; 250 NW2d 85 (1976).
"Although § 2(2) gives us little guidance, we find § 2(3) to be dispositive of this issue. That latter section indicates that the Michigan act should in general be construed so as to make Michigan `taxable income' the same as the `taxable income' under the Internal Revenue Code." Production Credit, supra, at 413-414.
"Obviously the Legislature intended to impose the state income tax `piggy-back' on Federal taxable income unless otherwise provided by statute." Michigan Consolidated, supra, at 435.
"Realistically, the executive branch of the government and the Legislature have no solid basis upon which to project forthcoming revenues other than to measure the yield from Federal tax returns." Michigan Consolidated, supra, at 443.
Conversely, plaintiff contends Cook v Department of Treasury, 396 Mich 176; 240 NW2d 247 (1976), reh den, 396 Mich 992 (1976), and Wackerman v Michigan, 47 Mich App 228; 209 NW2d 493 (1973), lv den, 390 Mich 797 (1973), are controlling.
Initially, we must determine whether Production Credit and Michigan Consolidated, supra, are determinative. In the former case the issue involved was whether the corporate taxpayer's net *530 operating loss carryback deductions had to be taken as state deductions in the same years as they were taken as Federal deductions. In the second mentioned case the question involved was whether depreciation deductions had to be taken as state tax deductions in the same years and in the same amounts as Federal tax deductions.[4] Thus, in both cases the common question was whether certain deductions had to be the same on both state and Federal returns. Both cases involved questions of deductions from otherwise taxable income.[5] In effect, our Court held that since the Michigan income tax statute  with certain limited exceptions  does not spell out permissible deductions but piggy-backs them by reference to the Federal statutes and regulations, deductions may be taken but only in the same amount and for the same years as permitted by Federal law. On the other hand, Wackerman and Cook, supra, were concerned with whether or not certain revenue was even taxable. In short, while Production Credit and Michigan Consolidated advanced the proposition that "in general Michigan taxable income should be the same as taxable income under the Internal Revenue Code"  a principle which we believe is still valid  both cases assumed that the revenue under consideration was taxable and proceeded from that assumption. Wackerman and Cook, on the other hand, challenged the assumption of taxability. The present case is like Wackerman and Cook. Therefore, we conclude that Production Credit and Michigan Consolidated, strictly speaking, are not controlling.
*531 Although neither the Wackerman nor Cook decisions deals directly with the exact issue involved here, both set forth the test or standard to be used to arrive at a conclusion. In Wackerman, supra, the question was whether bonus awards to certain employees of General Motors announced before the effective date of the personal income tax but paid to the employees in January, 1968, were taxable by the state in 1968. In arriving at its decision our Court first stated that:
"Central in deciding this issue is § 51(1) of the Michigan Act:
"`For receiving, earning or otherwise acquiring income from any source whatsoever, there is levied and imposed a tax of 3.9% [2.6% prior to August 1, 1971] upon the taxable income of every person, other than a corporation.'" Wackerman, supra, at 232.
The Court then concluded:
"The statute is clear. If plaintiffs received, earned or otherwise acquired income in January, 1968, that income is fully taxable. There is no dispute; plaintiffs did receive income in January, 1968, and by virtue of the plain language of § 51(1), this income is fully taxable, irrespective of when earned." Wackerman, supra, at 233 (Emphasis supplied.)
Cook, supra, was first heard by the Court of Appeals. 53 Mich App 228; 218 NW2d 861 (1974). Plaintiff in 1968 was paid $173,032.55 from a profit sharing trust. Since $158,680 of the amount paid had been credited to the trust prior to the effective date of the Michigan personal income tax, plaintiff claimed it was earned prior to the effective date of the statute and thus was not taxable even though received in 1968. Again, the Court of Appeals cited § 51 and Wackerman as the test for determining *532 taxability and concluded that since the sum was actually paid in 1968, it was taxable in that year. Upon appeal to the Supreme Court this portion of the opinion was sustained,[6] although the decision was reversed on other grounds not relevant to the case at hand.[7] Significantly, the Supreme Court accepted the § 51(1) standard without resorting to a test of piggy-back on the Federal income tax.
The controlling language of § 51 of the personal income tax has as its corporate counterpart § 61. The wording is virtually identical:
"Sec. 61. For receiving, earning or otherwise acquiring income from any sources whatsoever there is levied and imposed on every corporation except a financial institution a tax of 5.6% of the taxable income as defined in section 32 subject to the source and attribution rules contained in this act." Michigan Income Tax Act, § 61 [MCLA 206.61; MSA 7.557(161)], repealed by 1975 PA 233, § 2, imd eff Aug. 27. (Emphasis supplied.)
Applying this test to the case at hand, the key question is whether the $11,789.22 in dispute was received, earned or otherwise acquired by plaintiff in 1965 or in 1970. Both parties agree that the sum involved was generated by writing policies in 1965. Thus, it was "earned" in 1965. Both parties agree that the sum involved was placed in the PAL account in 1965. Thus, it was "received" by plaintiff in 1965. Was it "otherwise acquired" in 1965 or in 1970? We believe the answer is 1965, since it was in that year that the premium revenue *533 was first sequestered in a separate account (PAL) and then put to use.[8] Though it is true that $11,789.22 of the original $16,000 was not spent, it is equally true that it was used by establishing a reserve to pay losses.
Defendant argues that § 32 of the statute is the test of taxability rather than the § 61 standard applied in Wackerman, supra.[9] We respond to this argument by again noting that in Cook, supra, the Supreme Court held that our Court "did not err in applying Wackerman." It is also argued that even if one employs the § 61 test, the $11,789.22 was "received" or "otherwise acquired" in 1970 when the Federal government first "recognized" the amount remaining in the PAL account as income. In this argument, the words "recognized" and "received" are made synonymous. We believe this to be an impermissible stretching of precise statutory language and consequently reject the argument. Furthermore, no "on the nose" case is cited supporting such an interpretation. As we stated in Helvering v Horst, 311 US 112; 61 S Ct 144; 85 L Ed 75 (1940):
"Common understanding and experience are the touchstones for the interpretation of the revenue laws. (311 US 118.)
*534 "In the ordinary case the taxpayer who acquires the right to receive income is taxed when he receives it, regardless of the time when his right to receive payment accrued." (311 US 115-116.)
Common understanding and experience indicate to us that in the instant case plaintiff not only received but also used the sum involved in 1965.
We acknowledge that our conclusion in the instant case will lead to different dollar amounts being reported on plaintiff's 1970 state and Federal returns  a practice frowned upon in language in Production Credit, supra,[10] and quoted with approval in Michigan Consolidated Gas, supra. But the situations are not parallel. Our Supreme Court has held that there are situations when the dollar amounts on state and Federal returns for the same year may permissibly vary:
"In so holding, we recognize that plaintiff's state tax treatment will vary from his Federal tax treatment. Section 271 provides a barrier, beyond which the state's taxing power is not to extend. This barrier was established because an income tax had just been imposed. To assume parallel treatment is mandated in situations which are not parallel is unwarranted." Cook v Department of Treasury, 396 Mich 176, 183. (Emphasis supplied.)
Under Federal law, the funds remaining in the PAL account in the fifth year are added to rather than included in the gross income for the taxable year. Thus, implicitly, the Federal government recognizes that the funds remaining in the PAL account in 1970 are not income from 1970 but are *535 carry-over 1965 income, the taxation of which is deferred for Federal purposes until 1970.[11] But in 1965, there was no state income tax, either personal or corporate. Statutes operate prospectively only unless the contrary intent is clearly expressed in the statute itself. In re Davis' Estate, 330 Mich 647, 651; 48 NW2d 151 (1951). Tax statutes are no exception. Cleveland-Cliffs Iron Co v Department of Revenue, 329 Mich 225, 243; 45 NW2d 46 (1950). We repeat: Both under state law (Wackerman, supra; Cook, supra) and under Federal law, the sums in dispute in the instant case are recognized as 1965 earnings. Because of, and only because of, the special provisions contained in § 824, supra, these 1965 earnings, for Federal tax purposes, are added to the taxpayer's 1970 earnings. For state purposes, taxation of 1965 earnings when the state had no income tax on the books is retroactive taxation. The principles set forth in Production Credit and Michigan Consolidated, supra, are in no way denigrated. They are still valid and applicable unless they conflict with a long established and recognized rule of law. Clearly, in the instant case they conflict with the principle that, unless a contrary intent is expressed in the statute itself, taxation is not retroactively imposed.
Affirmed. No costs, a public issue being involved.
NOTES
[1] For an explanation of § 824, see 5 CCH-Standard Federal Tax Reporter (1977), para 4050.
[2] The "Protection Against Loss Account", referred to as the PAL account, is unique to mutual insurance companies, as distinguished from stock insurance companies. Section 824 of the Internal Revenue Code which sets up the PAL account was enacted for the purpose of equalizing the income tax obligations between mutual insurance companies and stock insurance companies. Because mutual insurance companies had no access to the capital market, the surplus required by law to be maintained for the payment of possible losses had to be generated internally whereas stock companies could raise equity capital for such surplus.

Section 824 establishes a formula by which a certain amount of premium and investment revenue received during the taxable year is declared to be free from the payment of income tax during that year. Depending upon whether the company incurs any underwriting losses during the following five years, the money set aside is then made subject to tax in the fifth subsequent year. The money received in 1965 went into the plaintiff's financial statement as an asset, and the Federal tax liability on the amount so set aside went into the financial statement on the liability side.
[3] "[B]ecause this income was recognized for financial reporting purposes in 1965, the taxation of this income in 1970 by the State of Michigan pursuant to its income tax statute would, in effect, be retroactive taxation.

"It is settled law in this state that a statute is not to be given retroactive effect until it is specifically so stated. There is no such statement in the Michigan income tax act." Trial court opinion, p 2.
[4] An additional issue, not relevant to the present case, was whether natural gas and gas appliances acquired before January 1, 1968, but sold thereafter, qualified as "assets" under § 271 of the Michigan statute.
[5] Production Credit, supra, at 415; Michigan Consolidated, supra, at 430.
[6] "The Court of Appeals did not err in applying Wackerman v Michigan, 47 Mich App 228; 209 NW2d 493 (1973), holding that when the sum of $173,032.55 was paid plaintiff herein, income was realized and taxable. There could be no § 271 exclusion unless the payment increased plaintiff's income." 396 Mich 176, 182.
[7] The "other grounds" refers to the issue of whether § 271 as originally enacted was applicable. See Michigan Consolidated Gas, supra, at 437-438.
[8] We do not intend to add a "use" test to the "receiving, earning or otherwise acquiring" language of the statute. But it is significant in this case that the plaintiff was able to use the premium revenue to fund a reserve against loss accounts in 1965.
[9] "Sec. 32.(1) `Taxable income' in the case of a corporation other than a financial institution means federal taxable income subject to the following adjustments:

* * *
"(2) Federal taxable income means `taxable income' as defined in § 63 of the internal revenue code." MCLA 206.32; MSA 7.557(132). (Emphasis supplied.) NOTE: The above sections were all repealed by 1975 PA 233, effective August 27, 1975, when the corporate income tax was replaced with the single business tax.
[10] "We view that section [§ 2(3)] as evidence of an intent to equate the dollar amount of the taxable income for state income tax purposes with the dollar amount of the taxable income for Federal income tax purposes." (Emphasis supplied.) 68 Mich App at 417.
[11] Section 32(2) of the Michigan act (quoted in footnote 9, supra) refers to taxable income as defined in § 63 of the Internal Revenue Code. IRC § 63 reads: "for purposes of this subtitle the term `taxable income' means gross income, minus the deductions allowed by this chapter". IRC § 441 refers to "taxable income" for the taxpayer's taxable year. Thus, in the instant case, but for the special provision contained in IRC § 824, supra, the Federal tax would have been levied on plaintiff's PAL earnings in 1965.