PRODUCTION CREDIT ASSOCIATION OF LANSING v
DEPARTMENT OF TREASURY

THE DETROIT EDISON COMPANY v DEPARTMENT OF
TREASURY

Docket Nos. 58387-58392, 59195. Argued January 4, 1978 (Calendar
Nos. 8, 9).—Decided December 28, 1978.

The Production Credit Associations of Lansing, Southeastern
Michigan, Grand Rapids, Kalamazoo, and Traverse City, and
the Evening News Association brought actions against the
Department of Treasury for refunds of state income taxes paid
for 1968, the first year of the state income tax. The plaintiff
associations each filed an amended return in 1971 claiming
refunds for 1968 resulting from the carry-back of net operating
losses sustained by the plaintiffs for the 1969 fiscal year. In
their Federal income tax returns the plaintiffs had carried back
their 1969 losses to offset income for 1966 and 1967, which
completely absorbed the losses. The Treasury Department disal-
lowed the plaintiffs' claims for the refunds on the ground that
the plaintiffs were required to carry back the losses to the same
years for state as for Federal taxes. The Ingham Circuit Court,
Jack W. Warren, J., consolidated the cases and granted sum-
mary judgment for the plaintiffs. The Court of Appeals, Allen,
P.J., and Bronson and R. M. Maher, JJ., reversed on the ground
that the Income Tax Act of 1967 expressly defines "income"
with reference to the Federal Internal Revenue Code (Docket
Nos. 22869-22874). The plaintiff associations appeal.

The Detroit Edison Company brought an action against the De-

REFERENCES FOR POINTS IN HEADNOTES
[1] 71 Am Jur 2d, State and Local Taxation § 448.
[2, 6, 9, 10] 71 Am Jur 2d, State and Local Taxation §§ 451, 452.
  Constitutionality, construction, and application of provisions of
    state tax law for conformity with federal income tax law or
    administrative and judicial interpretation. 42 ALR2d 797.
[3, 5, 10] 71 Am Jur 2d, State and Local Taxation §§ 587, 588.
[4] 73 Am Jur 2d, Statutes § 343.
[7, 12] 71 Am Jur 2d, State and Local Taxation §§ 443, 448.
[8, 11] 71 Am Jur 2d, State and Local Taxation § 538.
  72 Am Jur 2d, State and Local Taxation § 774.

partment of Treasury for a refund of state income taxes paid for 1968. The defendant disallowed Edison's claim of a depreciation allowance on the adjusted basis (for determining gain) of emergency defense facilities which were in service between 1941 and 1958 but which had been fully amortized over a 60-month period before 1968 for purposes of Edison's Federal income taxes under a former elective provision of the Internal Revenue Code. The defendant also rejected Detroit Edison's amended return which used as a basis for all its depreciable property the fair market value as of January 1, 1968, the day the income tax became effective, rather than the original cost of the property. The Ingham Circuit Court, James T. Kallman, J., denied the parties' motions for summary judgment. On Detroit Edison's appeal by leave granted, the Court of Appeals, D. F. Walsh, P.J., and Allen and Corkin, JJ., held that Edison could not take depreciation in 1968 for the fully amortized facilities, and that it could not revalue its property at fair market value on January 1, 1968, for state income tax purposes (Docket No. 27583). Plaintiff Detroit Edison appeals. *Held:*

1. The fact that the Income Tax Act is replete with terms of art not specifically defined in the act is indicative of a legislative intent that the act be interpreted in accordance with the experience and understanding of those who would be expected to use and interpret it. The legislative expression that state taxable income is to be the same as Federal taxable income, yet that corporate taxable income is the "net profits", defined as "net gain" after "provision for all costs and expenses", is not without ambiguity. This does not, however, require a conclusion that totally different tax computations for the two sovereigns were contemplated. The wording of the Income Tax Act persuades the Court that "net profits" are to be calculated using the accounting system used for Federal income tax purposes. The Legislature did not intend that the dollar amounts of state and Federal taxable income must be equal, but a taxpayer may not entirely disregard its Federal income tax calculations in determining state taxable income.

2. There is no doubt that a net operating loss deduction was contemplated by the Legislature. The statute explicitly stated that net profits were to be determined "without deduction of net operating loss carry-over or capital loss carry-over sustained prior to January 1, 1968". However, the statute does not state whether net operating losses were to be carried back to periods prior to January 1, 1968. The reasonable inference is that they should not be considered carried back to periods prior to January 1, 1968. The purpose of the provision for loss carry-

over is to give taxpayers the benefit of income averaging. To require the carry-back of losses to years before the effective date of the Income Tax Act would be inimical to the purpose of allowing taxpayers who suffered losses to recoup *taxes paid* in respect to an equivalent amount of income. The Legislature would not have intended to undo the workings of a system which seeks to complement the Federal system by disallowing the plaintiff associations' claims for refunds for 1968. Furthermore, in applying the statutory definition of "net profits", it is significant that the net operating loss carry-back or carry-over involves an *adjustment to* taxable income rather than a *computation of* taxable income.

3. The amendment in 1970 PA 140 which explicitly provides that a loss shall not be applied to the income of any taxable periods ending before January 1, 1968, indicates that the Legislature does not regard the construction urged by plaintiffs as inconsistent with the purpose of the act. A reasonable construction of the amendment is that it evidences a legislative intent to clarify the law rather than to change it, especially since it addresses an issue upon which uncertainty had arisen because it had not been addressed in the original act. The 1970 amendment does not require a different application for net operating losses for 1968 and 1969.

4. Plaintiff Detroit Edison argues that the Internal Revenue Code may be applied by analogy to compute the basis for depreciation of assets acquired before the effective date of the Income Tax Act, which would permit plaintiff Detroit Edison to use the greater of the fair market value on January 1, 1968, or the original cost of the property less depreciation to January 1, 1968, as the depreciable basis of assets acquired before that date. This argument completely overlooks the Legislature's expressed intention that income subject to state tax be the same as Federal taxable income. Federal taxable income is to be a "yardstick". To construe the Income Tax Act so as to permit a different depreciation deduction for property purchased before 1968 would make the "yardstick" useless. While the net operating loss question involves an adjustment to taxable income, clearly the depreciation allowance is part of the computation of net profits. The fact that the provision of the Internal Revenue Code concerning depreciation for emergency defense facilities is no longer available, and plaintiff Detroit Edison's election to apply that section was made before the institution of the Michigan tax, does not require a different result. The 1970 amendment defining corporate taxable income as Federal taxable income subject to certain adjustments and

repealing the reference to "net profits" does not require a different rule for 1968 and 1969. The intent of the Legislature was to clarify the law, rather than to change it.

5. The general rule is that assets are to be valued at original cost for income tax purposes. There is no indication that the Legislature intended any exception to the rule. Indeed, there is an indication in the Income Tax Act that the "writing up" of assets was not contemplated. The act allows a "holding period" calculation whereby a taxpayer who disposes of an asset after the effective date of the act may elect to exclude from taxable income the proportional gain attributable to the period before January 1, 1968. Although this provision speaks directly only to gains or losses upon disposition of an asset, its enactment is inconsistent with any revaluation of assets to January 1, 1968 fair market value for depreciation purposes. Therefore, use by plaintiff Detroit Edison of fair market value on January 1, 1968, as the depreciable basis of its assets is inappropriate.

The decision of the Court of Appeals is reversed as to *Production Credit.* The decision of the Court of Appeals is affirmed as to *Detroit Edison.*

Justice Moody, joined by Justice Ryan, concurred in part and dissented in part. They concurred in the result in *Detroit Edison,* dissented from the result in *Production Credit,* and disagreed with the analysis used in both.

1. The underlying issue in both cases is one of statutory construction, whether the Legislature intended that the dollar amount of taxable income for state income be *identical* with the dollar amount of taxable income for Federal income tax purposes. It is deduced from the plain meaning and common-sense interpretation of the statutory language that the Legislature intended that the dollar amounts be identical. Thus the taxpayers' claim in *Production Credit* must be rejected because, following Internal Revenue Code guidelines, net operating losses after January 1, 1968, were carried back to years preceding the operational effect of the Michigan statute. Likewise, Detroit Edison's claim must be rejected because the assets upon which the claim is based were fully amortized for Federal tax purposes before January 1, 1968. The only provision in the Michigan statute before 1970 forbade a net operating loss carry-over prior to January 1, 1968. To infer from the negative language of the statute that such carry-over deductions were permitted for post-January 1, 1968 losses confounds logic.

2. The 1970 amendment which clearly provided for operating loss carry-back and carry-forward was not intended merely as a clarifying amendment but as a radical departure from the prior

enactment. In addition, the very wording of the statute contradicts the argument that the amendment should apply retrospectively. The amendment applies prospectively; had the Legislature intended otherwise it would have said so.

68 Mich App 409; 242 NW2d 794 (1976) reversed.

72 Mich App 426; 250 NW2d 85 (1976) affirmed.

OPINION OF THE COURT

1. TAXATION — INCOME TAX ACT — CONSTRUCTION.

The fact that the Income Tax Act is replete with terms of art not specifically defined in the act is indicative of a legislative intent that the act be interpreted in accordance with the experience and understanding of those who would be expected to use and interpret it (MCL 206.1 *et seq.;* MSA 7.557[101] *et seq.).*

2. TAXATION — INCOME TAX — NET PROFITS — WORDS AND PHRASES.

"Net profits" of a corporate taxpayer under the former provisions of the Income Tax Act are to be calculated using the accounting system used for Federal income tax purposes; although the Legislature did not intend that the dollar amounts of state and Federal taxable income be equal, a taxpayer may not disregard its Federal income tax calculations in determining income taxable by the state (MCL 206.12; MSA 7.557[112]).

3. TAXATION — INCOME TAX — NET OPERATING LOSS — CARRY BACK.

The fact that the Legislature explicitly stated that net profits of a corporate taxpayer under the Income Tax Act were to be determined "without deduction of net operating loss carry-over or capital loss carry-over sustained prior to January 1, 1968" but did not express whether net operating losses sustained after that date were to be carried back to periods before that date reasonably implies that net operating losses should not be considered carried back to periods prior to January 1, 1968 (MCL 206.12; MSA 7.557[112]).

4. STATUTES — CONSTRUCTION — AMENDMENTS.

The general rule that an amendment is to be construed as changing the statute amended is not applied in reverse to determine the meaning of the statute before amendment by presuming that it must have been something different than that which is the clear intent of the statute after amendment.

5. TAXATION — INCOME TAX — NET OPERATING LOSS — CARRY BACK.

The amendment of the Income Tax Act which stated that a net operating loss of a corporate taxpayer "shall not be applied to the income of any taxable periods ending before January 1,

1968" evidences a legislative intent to clarify the law rather than to change it where there is no logical reason to distinguish 1968 and 1969 taxpayers from 1970 taxpayers with respect to the extent of net operating loss carry-back and the amendment addresses explicitly an issue upon which uncertainty had arisen because it had not been previously addressed in the Income Tax Act (1970 PA 140).

6. Taxation — Income Tax — Depreciation of Assets — Basis — Emergency Facilities.

The method of computation of taxable income for Federal income tax purposes is to be a "yardstick" applied to compute income subject to state income tax; to construe the Income Tax Act so as to permit a different deduction in computing state and Federal income for depreciation of emergency defense facilities purchased before January 1, 1968, the effective date of the Income Tax Act, would make the "yardstick" useless (26 USC 168; MCL 206.2, 206.32; MSA 7.557[102], 7.557[132]).

7. Taxation — Income Tax Act — Net Profits.

The amendment of the Income Tax Act which stated that taxable income of a corporation was the corporation's taxable income under the Internal Revenue Code subject to certain adjustments and repealing the provision which referred to "net profits" does not require a different computation for the tax years before the amendment where there is shown a legislative intent to clarify the law rather than to change it (1970 PA 140).

8. Taxation — Income Tax — Depreciation of Assets — Basis.

The general rule is that assets are to be valued at original cost for income tax purposes and the Income Tax Act indicates that no exception to the rule was contemplated by the Legislature; therefore, a corporate taxpayer's use of fair market value on January 1, 1968, the effective date of the Income Tax Act, as the depreciable basis of assets acquired before that date is inappropriate (26 USC 1012; MCL 206.271; MSA 7.557[1271]).

Opinion Concurring in Part and Dissenting in Part by Blair

Moody, Jr., J.

9. Taxation — Income Tax Act — Taxable Income.

*The plain meaning and common-sense interpretation of the statutory language of the Income Tax Act of 1967 show that the Legislature intended to require the dollar amount of state taxable income to be identical with the dollar amount of Federal taxable income (MCL 206.2; MSA 7.557[102]).*

10. TAXATION — INCOME TAX — NET OPERATING LOSS — CARRY BACK.

*Net operating losses of a corporate taxpayer sustained in 1969 which were carried back to the tax years before the operational effect of the Income Tax Act of 1967 for Federal income tax purposes should not be applied to reduce the taxpayer's state taxable income for years after that date because the Income Tax Act required the dollar amount of state taxable income to be identical with the dollar amount of Federal taxable income (MCL 206.2, 206.12; MSA 7.557[102], 7.557[112]).*

11. TAXATION — INCOME TAX — DEPRECIATION OF ASSETS — BASIS — EMERGENCY FACILITIES.

*A corporate taxpayer should not be permitted to claim a depreciation allowance under the Income Tax Act of 1967 for emergency defense facilities which had been fully amortized for Federal income tax purposes prior to January 1, 1968, the effective date of the Income Tax Act (26 USC 168; MCL 206.2, 206.32; MSA 7.557[102], 7.557[132]).*

12. TAXATION — INCOME TAX ACT — NET PROFITS.

*The amendment of the Income Tax Act which stated that taxable income of a corporation was the corporation's taxable income under the Internal Revenue Code subject to certain adjustments and repealing the provision which referred to "net profits" was not merely intended as a clarifying amendment but as a radical departure from the prior enactment; the amendment applies prospectively and had the Legislature intended otherwise it would have said so (1970 PA 140).*

*Dickinson, Wright, McKean, Cudlip & Moon* (by *Ernest Getz* and *Peter S. Sheldon)* for plaintiffs Production Credit Associations of Lansing, Southeastern Michigan, Grand Rapids, Kalamazoo, and Traverse City, and the Evening News Association.

*P. D. Conner, P.C. (Morley A. Wassermann* and *Milton B. Pollock,* of counsel), for plaintiff The Detroit Edison Company.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard R. Roesch* and *Charles E. Liken,* Assistants Attorney General, for defendants.

FITZGERALD, J. These cases arose out of disputes between the plaintiff taxpayers and the Michigan Department of Treasury concerning the relationship between Michigan's now-repealed[1] corporate income tax and the Federal income tax. The issue in *Production Credit Ass'ns v Dep't of Treasury* (hereafter "Production Credit") is whether Michigan's Income Tax Act required a corporation to carry back its post-January 1, 1968 net operating losses to the same years as it had carried back such losses for Federal income tax purposes. The issues in *Detroit Edison Co v Dep't of Treasury* (hereafter "Detroit Edison") are whether a corporate taxpayer was entitled to use the fair market value of its property as of January 1, 1968 as a basis for depreciation and whether a corporate taxpayer was entitled to deduct depreciation in calculating its Michigan income tax liability on assets which had been fully amortized for Federal income tax purposes before January 1, 1968 under a now-repealed section of the Federal Internal Revenue Code.

Production Credit plaintiffs[2] each claimed income tax refunds in amended returns based on a carry-back or carry-over of 1968 or 1969 net operating losses. Each of the Production Credit Associations sought to carry back a 1969 net operating loss to offset it against 1968 Michigan taxable income, while the Evening News Association sought to carry over a 1968 net operating loss to be applied to 1969 Michigan taxable income. On

---

[1] The Income Tax Act of 1967, 1967 PA 281; MCL 206.1 *et seq.;* MSA 7.557(101) *et seq.,* instituted an income tax on corporations effective January 1, 1968. The corporate income tax was repealed by 1975 PA 233. The corporate income tax was replaced by the single business tax, 1975 PA 228; MCL 208.1 *et seq.;* MSA 7.558(1) *et seq.*

[2] Although we use "Production Credit" in the singular, the term refers to six cases (Docket Nos. 58387-58392).

their Federal income tax returns plaintiffs had applied their net operating losses to years predating the effective date (January 1, 1968) of the Michigan Income Tax Act.[3]

The Revenue Division of the Michigan Department of Treasury denied the claims for refund, taking the position that because the Michigan tax base is to be identical to Federal taxable income each plaintiff's net operating loss had been used up when applied against Federal taxable income in years predating the effective date of Michigan's Income Tax Act. Each plaintiff then filed a circuit court action to recover the refund. The circuit court granted plaintiffs' motions for summary judgment. The Court of Appeals reversed. 68 Mich App 409; 242 NW2d 794 (1976).

Detroit Edison claimed a deduction on its first Michigan corporate income tax return for depreciation attributable to certain emergency defense facilities placed into service between 1941 and 1958. No depreciation deduction for the facilities was reported on Detroit Edison's Federal income tax return for 1968 because Detroit Edison had elected to amortize, in lieu of depreciation, the original cost of those facilities over a period of 60 months pursuant to § 168 and its predecessors, §§ 124 and 124A, of the Internal Revenue Code, and certificates of necessity obtained in conjunction therewith. The facilities had been fully amortized before the effective date of the Michigan

---

[3] At the time this case arose, under § 172 of the Internal Revenue Code, 26 USC 172, a corporation having a net operating loss for any taxable year could average the loss by carrying its loss back three years and by carrying any unused loss forward for five years. The code required that the loss first be carried back to the earliest of the taxable years to which the loss could be carried. Any portion of the loss which remained (after setting it off against taxable income from the year in which it was carried) was applied to successive later taxable years until exhausted.

Income Tax Act.[4] The Revenue Division disallowed the depreciation deduction attributable to the facilities claimed on Detroit Edison's 1968 Michigan return and Detroit Edison paid an additional tax of $162,342.63.

Three months after Detroit Edison's depreciation deduction was disallowed, plaintiff filed an amended return. On the amended return Detroit Edison used as a basis for all its depreciable property, including the emergency defense facilities, the fair market value as of January 1, 1968 rather than the original cost reported on its initial return. The fair market value was amortized over the remaining years of useful life. Accordingly, the depreciation deduction increased, and Detroit Edison filed, in conjunction with its amended return, a petition for refund of tax in the amount of $2,352,421.

After the Revenue Division rejected Detroit Edison's amended return, plaintiff filed a circuit court complaint. Both Detroit Edison and the Revenue Division moved for summary judgment. The circuit court denied both motions finding that "there is a genuine issue of fact and law as to the proper interpretation of the 1967 Public Act 281". Defendants consented to plaintiff's application for leave to appeal to the Court of Appeals. The Court of Appeals ruled in favor of the Revenue Division, 72 Mich App 426; 250 NW2d 85 (1976), finding its reasoning in *Production Credit* controlling.

The disputes herein concern differing interpretations of three sections of the Michigan Income Tax Act.

---

[4] Section 168 of the 1954 Internal Revenue Code was amended in 1957 to provide that no certificate of necessity could be issued after December 31, 1959. Section 168 was repealed by the Tax Reform Act of 1976. The section and its predecessors were enacted during World War II and the Korean conflict to encourage investment in facilities necessary for the national defense.

Section 2(3) of the Michigan Income Tax Act provided:

"It is the intention of this act that the income subject to tax be the same as taxable income as defined and applicable to the subject taxpayer in the internal revenue code, except as otherwise provided in this act." MCL 206.2; MSA 7.557(102).

Section 12(3) read:

" 'Net profits' means the net gain from the operation of a business, profession or enterprise, after provision for all costs and expenses incurred in the conduct thereof, determined on either a cash or accrual method, on the same basis as provided for in the internal revenue code for federal income tax purposes, but without deduction of any taxes imposed on or measured by income including taxes imposed by this act and without deduction of net operating loss carry-over or capital loss carry-over sustained prior to January 1, 1968." MCL 206.12; MSA 7.557(112).

Section 32 stated:

" 'Taxable income' in the case of a corporation other than a financial institution means:
"(a) Net profits as defined in this act subject to the following adjustments * * * ." MCL 206.32; MSA 7.557(132).

The fundamental rule of statutory construction is to ascertain and give effect to the legislative intention, *Lansing v Lansing Twp,* 356 Mich 641; 97 NW2d 804 (1959). The Revenue Division argues that § 2(3) is dispositive of the questions involved here. The Legislature's expression of an intention that "the income subject to tax be the same as taxable income * * * in the internal revenue code" requires identical computations. The Revenue Division explains that the Michigan income

tax is a "piggy-back" on the Federal income tax. The Court of Appeals accepted that position when it found a legislative "intent to equate the dollar amount of the taxable income for state income tax purposes with the dollar amount of the taxable income for Federal income tax purposes". 68 Mich App 409, 417.

Plaintiff taxpayers, on the other hand, contend that the legislative intent is expressed in that part of § 2(3) which reads: "except as otherwise provided in this act". Because corporate taxable income is defined in § 32 in terms of "net profits" (which is "net gain * * * after provision for all costs and expenses", § 12[3]), the Legislature has otherwise provided in the case of corporations. While the Internal Revenue Code may be used as a frame of reference, the piggy-back approach, requiring identical computation methods, is unduly simplistic.

It is axiomatic that words in a statute are to be interpreted according to their commonly accepted meanings, *Detroit v Tygard,* 381 Mich 271; 161 NW2d 1 (1968). The fact that the Income Tax Act is replete with terms of art not specifically defined in the act[5] is indicative of a legislative intent that the act be interpreted in accordance with the experience and understanding of those who would be expected to use and interpret the act. In addition to directing our attention to the Internal Revenue Code by expressing its intention in § 2(3), the Legislature has stated in § 2(2) that: "[a]ny term used in this act shall have the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes unless a different meaning is clearly required".

---

[5] For example, "cash or accrual method", § 12(3); "fiscal year", § 24; "credit", § 28; "obligations of the United States government", § 30; "sales or exchanges", § 112; "asset", § 271.

The Legislature's expression that Michigan taxable income is to be the same as Federal taxable income, yet direction in § 32 that corporate taxable income is to be "net profits" (defined in § 12[3] as "net gain" after "provision for all costs and expenses") is not without ambiguity. We do not, however, conclude, that because the Legislature did not define corporate taxable income as Federal taxable income in § 32, totally different tax computations for the two sovereigns were contemplated. The wording of § 12(3) persuades us that "net profits" are to be calculated using the accounting system used for Federal income tax purposes:

" 'Net profits' means the net gain from the operation of a business, profession or enterprise, after provision for all costs and expenses incurred in the conduct thereof, *determined on either a cash or accrual method, on the same basis as provided for in the internal revenue code for federal income tax purposes,* * * * " (emphasis added).[6]

While we agree with plaintiffs that the Legislature did not intend that the dollar amounts of state and Federal taxable income be equal,[7] neither do we find that a taxpayer may entirely

[6] While it can be argued that "on the same basis as provided for in the internal revenue code" refers to "either a cash or accrual method", a 1969 amendment to § 12(3) indicates that it is costs and expenses which are to be determined using the same accounting method as for Federal income tax purposes: " 'Net profits' means the gross income of a business, profession or enterprise, less all costs and expenses incurred in the conduct thereof, *determined in accordance with the same accounting method used for the same tax period for federal income tax purposes* * * *", emphasis added. 1969 PA 332.

[7] The case in which Federal and Michigan taxable income would be equal dollar amounts would, we suppose, be the exception rather than the rule. The adjustments in §§ 12 and 32, the § 271 exclusion and the allocation and apportionment rules of chapter 3 for taxpayers having income-producing activities in other states, all serve to differentiate the amounts of taxable income. See, also, *Cook v Dep't of Treasury,* 396 Mich 176; 240 NW2d 247 (1976).

disregard its Federal income tax calculations in determining Michigan taxable income. We hold for the taxpayers and reverse the Court of Appeals in *Production Credit.* We, too, hold for the Revenue Division in *Detroit Edison,* although for different reasons than those forming the basis for judgment in the Court of Appeals.

With respect to the net operating loss issue involved in *Production Credit,* defendant argues that:

"It is obvious from the wording in § 2(3) that the Michigan tax base * * * was to be identical (unless otherwise specified in the Michigan Income Tax Act) to federal taxable income. To accomplish this statutory command, any operating loss sustained subsequent to January 1, 1968, must be applied against the net profits of the same tax period as it is applied for federal income tax purposes."

The plaintiffs in *Production Credit* respond that the purpose of the net operating loss deduction is to allow taxpayers who suffer losses to recoup *taxes paid* in respect to an equivalent amount of income and that the defendant's construction of the Michigan statute, requiring the carry back of losses to years before the effective date of the Michigan income tax law, is not consistent with that purpose. Further, "taxable year" is defined in the Michigan Income Tax Act as "the calendar year, or the fiscal year ending during such calendar year, upon the basis of which taxable income is computed *under this act"* (emphasis supplied). MCL 206.24; MSA 7.557(124). Because 1966 and 1967, the years to which plaintiffs had carried back their 1969 losses on their Federal returns, were not "taxable years" under the Michigan act, and it is clear that carry-backs and carry-overs are

to "taxable years" under the Internal Revenue Code, no net operating loss should be considered carried back to those years for Michigan tax purposes.

In view of the fact that the Legislature specifically mentioned "net operating loss" in the act, there can be no doubt that a net operating loss deduction was contemplated by the Legislature. The Legislature explicitly stated in § 12(3) that net profits were to be determined "without deduction of net operating loss carry-over or capital loss carry-over sustained prior to January 1, 1968". What was not expressed was whether net operating losses were to be carried back to periods prior to January 1, 1968. The reasonable inference from what was expressed is, we believe, that net operating losses should not be considered carried back to periods prior to January 1, 1968.

We find the decision in *In the Matter of Avien, Inc,* 532 F2d 273 (CA 2, 1976), construing a comparable provision of the New York City income tax law, persuasive. The city had contended that since under the Federal law the taxpayer was required to carry back income to a year before the city income tax law was effective, it could not offset post-effective-date losses against post-effective-date income. The city law, paralleling the Michigan law, required that net income be "the same as" that reported in a taxpayer's Federal return. The Court said:

"The City's tax code provides that net income shall be *'the same as'* that which is reported on a taxpayer's federal return, and that net operating loss deductions shall also be 'the same as' deductions allowed under § 172 of the Internal Revenue Code ('Code'). However, this does not mean, and the District Court so held, that the reported figures on city and federal returns must be

identical. Under the Code, *it is not the identity of the loss deduction figures which is required, but rather the identity of permissible computation procedures used to calculate those figures.*

"Section 172 of the Code outlines the basic deduction allowed for net operating loss, and includes carry-back and carry-over provisions to ensure accurate and fair *income averaging* over a period of years. Under the Code the taxpayer is permitted to carry losses back three years, and forward five years. In that section it is expressly provided that carry-overs and carry-backs shall be to *'taxable'* years within the permissible eight-year span. Utilization of losses to or from the earliest year possible is thus subject to the qualification that all of the years in question be 'taxable' years. This qualification is also explicitly incorporated into the Code's computation procedures: subsection (e) of § 172 specifies that ·'the necessary computations involving any other taxable year [than the one to which the loss is applied] shall be made under the law *applicable to such other taxable year.'* (Emphasis supplied.)

"Applying this statutory scheme to Avien's deductions on its City return, it is readily apparent that Avien could not utilize losses from 1963 because that year was not a 'taxable' year under the City tax laws. Similarly, computation of the permissible loss deductions under § 172(e) for the year 1963 would be impossible since there were no City tax laws applicable in that year.

"The *purpose* of the City's adoption of loss carry-overs and carry-backs *is to give City taxpayers the benefit of income averaging, not to exclude them from it."* 532 F2d 273, 275-276 (emphasis changed).

The acceptance of the instant defendant's argument would produce a result inimical to the equitable goals of income averaging. We do not believe that the framers of the Michigan Income Tax Act, which specifically seeks to complement the Federal system of loss carry-overs and carry-backs, intended to undo the workings of that system by

disallowing the plaintiffs' claim for refunds for 1968, resulting from the carry-over or carry-back of net operating losses sustained by each for its 1968 or 1969 fiscal year. Furthermore, in applying § 12(3), it is significant that the net operating loss carry-back or carry-over involves an *adjustment to* taxable income rather than a *computation of* taxable income.

The Oregon Supreme Court has reached the same result in construing a similar statute, *Christian v Dep't of Revenue,* 269 Or 469; 526 P2d 538 (1974).[8] Michigan's Board of Tax Appeals has also reached this result, *Carrollton Concrete Mix Inc v Dep't of Treasury,* Docket No 930 (January 8, 1974), and *Rollform, Inc v Dep't of Treasury,* Docket No 947 (January 8, 1974), reasoning that:

"The Internal Revenue Code section [172(b)(1)] directs carry-back losses and carry-forward losses to *taxable* years; therefore when applying the provisions of the above, to a loss incurred in a year taxable by Michigan, to be consistent one would carry-back that loss to each of the three *Michigan taxable* years preceding the *Michigan taxable* year of such loss. The first year taxable by Michigan was 1968, therefore years prior to 1968 are not considered 'taxable years' by the Michigan Income Tax Act." (Emphasis in original.)

Both parties argue the effect of 1970 PA 140 which amended the act. We cannot accept defendant's contention that the 1970 amendment changed the law. In 1970, § 12(3) was repealed and § 32 was amended to read:

"(1) 'Taxable income' in the case of a corporation other than a financial institution means federal taxable income subject to the following adjustments:

_____

[8] *Contra,* on a similar issue, see *Getty Oil Co v Oklahoma Tax Commission,* 563 P2d 627 (Okla, 1977).

\*    \*    \*

"(c) Add any net operating loss deductions which have been deducted in arriving at federal taxable income, and deduct any net operating loss deductions as defined in subsection (3)."

Subsection (3) explained how to carry back and forward net operating losses (the method was the same as § 172 of the Internal Revenue Code) and ended with this sentence: "A net operating loss shall not be allowed for taxable periods ending before January 1, 1968, *and the loss shall not be applied to the income of any taxable periods ending before January 1, 1968.*" (Emphasis added.) The amendment indicates that the Legislature does not regard the construction urged by plaintiffs as inconsistent with the purpose of the act. We can think of no logical reason why the Legislature would want to distinguish 1968 and 1969 taxpayers from 1970 taxpayers with respect to the extent of net operating loss carry-backs. We believe a reasonable construction of the amendment evidences a legislative intent to clarify the law rather than to change it.[9] The fact that the amendment addresses explicitly an issue upon which uncertainty had arisen because the issue had not been specifically addressed in the original act lends support to our belief that the intent was to clarify.

*Detroit Edison Co v Janosz,* 350 Mich 606; 87 NW2d 126 (1957), illustrates this principle of statutory construction. That case involved the propriety of allowing attorney fees in addition to taxable costs in a condemnation case. The pre-amended section read, in part:

---

[9] See, generally, 1A Sutherland, Statutory Construction (4th ed), §§ 22.30 and 22.31, pp 178-186.

"The expense of the proceeding shall be paid by the petitioner and as a part thereof the court shall allow such fees and compensation as seem just and reasonable." MCL 486.252g; MSA 22.1672(7).

An amendment to the statute after the case was tried read, in part, "the court shall allow, in addition to taxable costs, additional attorney fees as may seem just and reasonable by the court for attendance at the hearing". This Court rejected the contention that to give meaning to the amendment the original statute must be construed as not providing for attorney fees, stating that, while as a general rule an amendment is to be construed as changing the statute amended,

"The rule is not applied in reverse for the purpose of determining the meaning of the statute before amendment by presuming that it must have been something different than that which is the clear intent of the statute after amendment. * * * While in many and perhaps most instances it undoubtedly is the legislative intent, in enacting an amendment to change existing law, there are, as undoubtedly, other instances, particularly if uncertainty exists as to the meaning of a statute, when amendments are adopted for the purpose of making plain what the legislative intent had been all along from the time of the statute's original enactment." 350 Mich 606, 613-614.

Accordingly, we reject defendant's argument that the 1970 amendment in question here, that net operating loss "shall not be applied to the income of any taxable periods ending before January 1, 1968" requires a different application of those losses for 1968 and 1969.

In the *Detroit Edison* case the parties agree that a deduction for depreciation is to be allowed as part of a "provision for all costs and expenses",

§ 12(3). The parties differ considerably on the extent of the deduction. Defendant again argues that the Legislature's intention, expressed in § 2(3), to subject to Michigan tax the same income as is subjected to Federal tax, requires a holding that the depreciable basis of assets and the depreciation deduction for Michigan income tax be the same as the Federal.

Plaintiff Detroit Edison argues that the Internal Revenue Code is to be used only as a frame of reference. Plaintiff was entitled to a deduction for depreciation as a cost or expense incurred in the operation of its business. Because § 168 of the Internal Revenue Code had expired by 1968, another method of computing the depreciation experienced in 1968 had to be found. Plaintiff chose straight line depreciation, 26 USC 167(b)(1), and chose useful lives of 28 and 30 years, Revenue Procedure 62-21, 1962-2 Internal Revenue Cumulative Bulletin, p 418. In arriving at fair market value on January 1, 1968 as the depreciable basis of its assets, Detroit Edison reasons that the Internal Revenue Code may be applied by analogy. The Internal Revenue Code provides that the basis of property acquired before the effective date of the act, March 1, 1913, is the greater of the fair market value on the effective date or the original cost of the property less depreciation to the effective date. Accordingly, Detroit Edison may use the fair market value on January 1, 1968 as the depreciable basis of its assets acquired before the effective date of the Michigan income tax act.

While we find no legislative intent to equalize the dollar amounts of state and Federal taxable income, we do not carry that principle as far as Detroit Edison would have us do. Although Detroit Edison's argument as to depreciation has some

appeal, it completely overlooks the Legislature's expressed intention that Michigan income subject to tax be the same as Federal taxable income. Federal taxable income is to be a "yardstick" said the Court of Appeals of Maryland in a well-reasoned opinion to explain why the state could validly tax annual installment payments[10] arising out of transactions completed before the state income tax reached capital gains,[11] *Katzenberg v Comptroller of Treasury*, 263 Md 189; 282 A2d 465 (1971). To construe the act so as to permit a different depreciation deduction for property purchased before 1968 would make the yardstick useless. As was hereinbefore stated, § 12(3) indicates that the method of calculation for Federal income tax purposes is to be applied. While the net operating loss question involves an adjustment to taxable income, clearly the depreciation allowance is part of the computation of net profits.

The fact that § 168 of the Internal Revenue Code is no longer available, and plaintiff's election to apply that section was made before the institution of the Michigan tax, does not require a different result. This case, involving a disputed pre-effective date deduction, is analogous to the case involving taxing a gain upon disposition of an asset when a portion of the gain is attributable to appreciation of the asset during periods before an income tax becomes effective. Several cases have found no infirmity in including that gain in income. See *Marco Associates, Inc v Comptroller of Treasury*, 265 Md 669; 291 A2d 489 (1972); *Tiedemann v*

---

[10] Section 453 of the Internal Revenue Code.

[11] The Maryland statute read:

"The net income of a corporation shall be the taxable income of such taxpayer as defined in the laws of the United States as amended from time to time and for the corresponding taxable period * * * ." Md Ann Code, art 81, § 280A(a).

*Johnson,* 316 A2d 359 (Me, 1974); *Shangri-La v State,* 113 NH 440; 309 A2d 285 (1973); *Altsuler v Peters,* 190 Neb 113; 206 NW2d 570 (1973); *City National Bank of Clinton v Iowa State Tax Commission,* 251 Iowa 603; 102 NW2d 381 (1960), and *MacLaughlin v Alliance Ins Co,* 286 US 244; 52 S Ct 538; 76 L Ed 1083 (1932). But see *Fremont Mutual Ins Co v Dep't of Treasury,* 73 Mich App 526; 252 NW2d 837 (1977).

Again the parties argue the effect of 1970 PA 140. In 1970, § 32 was amended so that " 'taxable income' in the case of a corporation other than a financial institution means federal taxable income" (subject to adjustments not pertinent here). Section 12(3) referring to "net profits" was repealed.[12] In this case the parties are reversed in position as to the effect of the amendment, with the plaintiff taxpayer here arguing that the amendment changed the law, while the Revenue Division states "[i]t always has been our position that 'net profits' was the equivalent of Line '28', *i.e.,* of corporate taxable income before net operating loss and special deductions".

Using the principle of statutory construction utilized in *Production Credit,* we again find a legislative intent to clarify the law rather than to change it. See *Detroit Edison Co v Janosz,* 350 Mich 606; 87 NW2d 126 (1957). Thus, the 1970 amendment making corporate taxable income Federal taxable income subject to adjustments does not require a different rule for 1968 and 1969.

We also find Detroit Edison's use of fair market value as of January 1, 1968 as the depreciable basis of its assets inappropriate. Again, Detroit Edison's approach ignores the Legislature's ex-

---

[12] The 1969 amendment to § 12(3), quoted in part in fn 6, *supra,* appears to be a step in the clarification process.

pressed intention in § 2(3). The analogy to property acquired before March 1, 1913 completely ignores § 1012 of the current Internal Revenue Code: "The basis of property shall be the cost of such property * * * ."

The general rule is that assets are to be valued at original cost for income tax purposes.[13] We find no indication that any exception to the rule was intended by the Michigan Legislature. Indeed, we find an indication in the act that the writing up of assets was not contemplated. Section 271[14] allows a "holding period" calculation whereby a taxpayer who disposes of an asset after the effective date of the act may elect to exclude from taxable income the proportional gain attributable to the period before January 1, 1968. While § 271 speaks directly only to gains or losses upon disposition of an asset, the enactment of § 271 is inconsistent with

[13] Whether original cost or fair market value should be the depreciation base of assets for reporting purposes is an issue generating considerable controversy within the accounting profession. See Fiflis & Kripke, Accounting for Business Lawyers (St Paul: West Pub Co, 1971), ch 5, § J, pp 227-233, "The Depreciation Base—Cost or Value", and ch 7, § D, pp 297-327 on "Fair Value Accounting". Those sections present several excerpts from and citations to articles by authorities on both sides of the debate.

In the absence of any legislative indication to the contrary, we maintain the traditional view, and leave adoption of fair value accounting to the accounting profession. In any event, the Internal Revenue Code (§ 1012) clearly indicates that, for income tax purposes, for property acquired after March 1, 1913, the depreciation base is to be cost.

[14] "Sec. 271. (1) A taxpayer * * * whose income received after December 31, 1967 is increased or diminished by the disposition of an asset acquired before January 1, 1968 may elect to recompute taxable income by excluding therefrom the proportional gain or loss incurred prior to January 1, 1968. Taxpayers so electing shall be subject to a tax on taxable income thus recomputed at the rates imposed by this act. An election so made shall include all items of gains or losses realized during the taxable year.

"(2) The proportion of gain or loss occurring after December 31, 1967, to total gain or loss is equal to the proportion the number of months after December 31, 1967, to date of disposition bears to the number of months from date of acquisition to date of disposition."

any revaluation of assets to January 1, 1968 fair market value for depreciation purposes.[15] As the Revenue Division states it:

> "But § 271 does not allow any revaluation of that capital asset as of January 1, 1968.
> "The emphasized fact is very important! The Michigan law could easily have provided that the 'basis' of property should be recomputed as of January 1, 1968, for purposes of calculating capital gains and for purposes of depreciation. It did not do so!"

In *Production Credit* the decision of the Court of Appeals is reversed. In *Detroit Edison* the decision of the Court of Appeals is affirmed. No costs, a public question.

KAVANAGH, C.J., and WILLIAMS, LEVIN, and COLEMAN, JJ., concurred with FITZGERALD, J.

BLAIR MOODY, JR., J. *(concurring in part, dissenting in part)*. I concur with the result reached by Justice FITZGERALD in *Detroit Edison*. I dissent in the result reached in *Production Credit* and with the analysis used in both *Production Credit* and *Detroit Edison*.

The real underlying issue in both *Production Credit* and *Detroit Edison* is one of statutory construction, whether the Legislature in drafting § 2(3) of the Michigan Income Tax Act of 1967, MCL 206.1 *et seq.;* MSA 7.557(101) *et seq.,* intended that the dollar amount of taxable income

---

[15] Section 271 was not necessary to validate the tax, see *Shangri-La v State, supra.* The enactment of that section appears to be a legislative attempt to ameliorate the effect of institution of the tax by allowing an election to recompute taxable income. The fact that the computation is to be done in terms of number of months indicates that the basis and depreciation deduction are not to be recomputed.

for state income tax purposes be *identical* with the dollar amount of taxable income for Federal income tax purposes. This is true whether the question is framed in terms of carry-back of net operating losses as in *Production Credit* or depreciation allowance as in *Detroit Edison.*

Section 2(3) of the Michigan Income Tax Act read:[1]

"It is the intention of this act that the income subject to tax be the *same* as taxable income as defined and applicable to the subject taxpayer in the internal revenue code, *except as otherwise provided in this act."* MCL 206.2; MSA 7.557(102). (Emphasis added.)

Applying the general rule of statutory construction that plain meaning is to be given to the words of a statute, *General Motors Corp v Erves, (On Rehearing),* 399 Mich 241, 253; 249 NW2d 41 (1976), appellee would have us focus on the "same" language and interpret it to mean that a taypayer's Michigan tax form would have to be identical with the taxpayer's Federal tax form. Thus, the Michigan income tax would "piggy-back" on the Federal income tax.

Appellants, on the other hand, shift the focus from the "same" language and argue that plain meaning can be inferred from that part of § 2(3) which read: "except as otherwise provided in this act". Explaining this provision, appellants refer to § 32 of the act which defined corporate taxable income in terms of "net profits", MCL 206.32; MSA 7.557(132), and then to § 12(3) which defined net profits as follows:

---

[1] We note that the Income Tax Act at issue, 1967 PA 281; MCL 206.1 *et seq.;* MSA 7.557(101) *et seq.,* was repealed by 1975 PA 233. The corporate income tax was replaced by the single business tax, 1975 PA 228; MCL 208.1 *et seq.;* MSA 7.558(1) *et seq.*

" 'Net profits' means the net gain from the operation of a business, profession or enterprise, after provision for *all costs and expenses* incurred in the conduct thereof, determined on either a cash or accrual method, on the same basis as provided for in the internal revenue code for federal income tax purposes, but without deduction of any taxes imposed on or measured by income including taxes imposed by this act and without deduction of net operating loss carry-over or capital loss carry-over sustained prior to January 1, 1968." MCL 206.12; MSA 7.557(112). (Emphasis added.)

Because the statutory language defining net profits provides an allowance for all costs and expenses, which presumably include losses and depreciation, appellants argue that Michigan corporate taxable income cannot be identical with Federal taxable income as there could be no allowance for losses or depreciation.

Although the approach is arguably simplistic, we deduce from the plain meaning and common-sense interpretation of the statutory language that the Legislature intended to require the dollar amount of state taxable income be identical with the dollar amount of Federal taxable income. Thus, we must reject appellant's claim in *Production Credit* for an income tax refund because, following Internal Revenue Code guidelines, it carried back post-January 1, 1968 net operating losses to years preceding the operational effect of the Michigan statute. Likewise, we must also reject appellant Detroit Edison's depreciation allowance claim because the assets upon which appellant bases its claim had been fully amortized for Federal income tax purposes prior to January 1, 1968.

Appellants would have us rely on a recent Federal Court decision, *In the Matter of Avien, Inc,* 532 F2d 273 (CA 2, 1976). In *Avien,* the City of

New York imposed a tax on corporate net income in accordance with the New York City Administrative Code. Section R46-2.0(8)(f) of the code read:

"A net operating loss deduction shall be allowed which shall be the same as the net operating loss deduction allowed under section one hundred seventy-two of the internal revenue code."

The *Avien* court rejected the city's argument that any loss carry-forward or carry-back of net operating loss deductions must be identical for a given year with that used for Federal income tax purposes.

Appellants in the instant case argue that *Avien* should be dispositive because of the relative similarity between the New York City code and the Michigan act. This argument fails precisely because of the dissimilarity between the two statutes.

The New York City code had affirmative provisions for the carry-forward and carry-back of net operating loss. No such provision existed in the Michigan act. The only provision in the Michigan act prior to 1970 regarding carry-overs was found in § 12(3) which forbade the "net operating loss carry-over * * * prior to January 1, 1968". MCL 206.12; MSA 7.557(112). To infer from the negative language of the statute that such carry-over deductions were permitted for post-January 1, 1968 losses confounds logic.

Failing in that argument, appellants would have us focus on the Legislature's adoption of 1970 PA 140 which amended § 32 of the Michigan Income Tax Act. MCL 206.32; MSA 7.557(132). The 1970 amendment of § 32 clearly provided for operating loss carry-back and carry-forward. Appellants contend the legislative amendment was effected as a

means of clarifying ambiguity in the earlier enactment and should thus apply retrospectively.

This position is totally unsupportable. As the circuit court noted in the case of *Auto Owners Ins Co v Dep't of Treasury,* Ingham Circuit Court No. 14927-C (December 10, 1973), which opinion was adopted in its entirety by the Court of Appeals, *Auto Owners Ins Co v Dep't of Treasury,* Docket No. 19376 (November 4, 1974):

"The 1970 amendment of section 32 contained in 1970 PA [140] is a complete departure from the definitions of corporate taxable income adopted by the Legislature in the 1967 Act and 1969 amendment."

The amendment of § 32 was not merely intended as a clarifying amendment but as a radical departure from the prior enactment. Additionally, appellants' argument that such amendment should apply retrospectively is contradicted by the very wording of the statute:

"This amendatory act shall be effective for all returns for the calendar year 1970 and any fiscal year beginning on or after February 1, 1970." 1970 PA 140, § 3.

The amendment applies prospectively; had the Legislature intended otherwise it would have said so.

Because we read the provision of the Michigan Income Tax Act of 1967 to mandate that a taxpayer's Michigan income tax form be identical with the taxpayer's Federal tax form, we affirm the Court of Appeals decisions in both *Production Credit* and *Detroit Edison.*

RYAN, J., concurred with BLAIR MOODY, JR., J.