BRUNO v DEPARTMENT OF TREASURY

Docket No. 87152. Submitted June 18, 1986, at Lansing. Decided January 6, 1987.

Michael D. Bruno, a professional gambler characterizing his gambling losses as business losses, claimed a $6,892 overpayment on his 1983 Michigan income taxes. The Department of Treasury, which had approved similar tax treatment for earlier years, notified Bruno that his refund, as well as all refunds involving professional gamblers, was being held in abeyance pending the outcome of a federal lawsuit involving the issue of whether gambling losses may be considered as business losses for income tax purposes. Bruno filed suit against the Department of Treasury in the Court of Claims, asserting that, since the IRS had not chosen to delay paying refunds to professional gamblers for the tax year 1983, defendant likewise should not delay. In 1984, the federal lawsuit resulted in a ruling that the professional gambler involved was not engaged in a trade or business within the meaning of the Internal Revenue Code and thus could not claim gambling losses as business losses. The Department of Treasury filed a motion for summary disposition in the instant case, claiming that the federal case was on point. The court, Robert Holmes Bell, J., denied defendant's motion and granted summary disposition in favor of plaintiff, ruling that the federal decision could not be retroactively applied to plaintiff's 1983 claim of refund. Defendant appealed.

The Court of Appeals *held:*

There is a split of authority among the various federal circuit courts as to which of two tests should be used to determine whether a professional gambler is engaged in a trade or business within the meaning of the business loss deduction provision of the Internal Revenue Code. It is unnecessary to determine which test applies in this case, however, because if the "facts and circumstances" test advocated by plaintiff is disposi-

REFERENCES

Am Jur 2d, Courts §§ 222 *et seq.;* 229.

Am Jur 2d, State and Local Taxation §§ 520 *et seq.*

See the annotations in the Index to Annotations under Courts; Gambling.

tive, the decision of the trial court would be affirmed as reaching the right result for the wrong reason and if the "goods and services" test advocated by defendant is controlling, the trial court's well-reasoned opinion denying retroactive application of that test to defendant's 1983 return would be affirmed. If there is no decision of the United States Supreme Court and the federal courts disagree on the interpretation of a federal act, the courts of Michigan may adopt a view which appears most appropriate under the circumstances. There was no error in the trial court's decision.

Affirmed.

1. TAXATION — PROFESSIONAL GAMBLERS — INCOME TAX — GAMBLING LOSSES.

A person who was a professional gambler in 1983 must be deemed to have been engaged in the trade or business of gambling and his gambling losses therefore treated as business losses for purposes of determining his 1983 state income tax liability where similar tax treatment had been accepted in earlier years and a federal court case holding that gambling losses could not be treated as business losses was not decided until 1984.

2. COURTS — FEDERAL STATUTES — JUDICIAL CONSTRUCTION — FEDERAL PRECEDENT.

State courts are bound by the authoritative holdings of federal courts upon federal questions; if there is no decision by the United States Supreme Court and the federal courts disagree on the interpretation of a federal act, the Court of Appeals will adopt a view which appears most appropriate under the circumstances.

*Burton H. Schwartz, P.C.* (by *Burton H. Schwartz* and *Merton E. Simons*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Russell E. Prins,* Assistant Attorneys General, for defendant.

Before: SHEPHERD, P.J., and J. H. GILLIS and MACKENZIE, JJ.

PER CURIAM. This case involves an appeal as of

right from a Court of Claims grant of judgment under MCR 2.116(I)(2) to plaintiff for $6,892, which represents plaintiff's claimed tax overpayment as reported on his 1983 Michigan Individual Income Tax Return (form MI-1040). Defendant, by contrast, claimed that plaintiff owed a 1983 income tax deficiency of $18,430 and had moved for summary disposition under MCR 2.116(C)(8) and (10). Defendant's motion was denied. We affirm.

The facts are not disputed. Plaintiff is a professional gambler who for several years has earned his income primarily from horse-racing wagering. During years 1979 through 1983, plaintiff incurred substantial gambling losses as well as winnings. On his federal income tax returns for each year, plaintiff reported his losses as business losses (a so-called "above the line" deduction) and accordingly subtracted them from his gross income in computing his adjusted gross income. Plaintiff then reported the federal adjusted gross income figure in his Michigan return (Michigan income taxes are normally based on the taxpayer's adjusted gross income figure reported on the federal return) and calculated his state income tax liability therefrom. The Internal Revenue Service has never challenged plaintiff's characterization of his gambling losses as business losses. It should be noted that, under the Internal Revenue Code, *individuals* may take as a "below the line" deduction (i.e., a deduction made after the computation of adjusted gross income) wagering losses to the extent of gains. 26 USC 165(d). Only "above the line" deductions such as plaintiff's business loss deductions affect Michigan income taxes, however, since it is these deductions which determine adjusted gross income.

Using the above-described tax computation method, plaintiff claimed a refund on his Michigan income taxes for the years 1979 through 1983. In

1981, defendant notified plaintiff that it was denying the refund for years 1979 and 1980 because plaintiff's gambling losses were not business losses and thus were not deductible in arriving at his adjusted gross income. This contention was based on 26 USC 62(1), which defines trade and business deductions as deductions "which are attributable to the trade or business carried on by the taxpayer . . . ."

In 1982, the Tax Tribunal entered a judgment denying plaintiff's claim of refund for 1980. In concluding that plaintiff's wagering activities were not a "trade or business" within 26 USC 62(1), the Tax Tribunal relied on *Gentile v Comm'r,* 65 TC 1 (1975), *Higgins v Comm'r,* 312 US 714; 61 S Ct 475; 85 L Ed 2d 783 (1941), reh den 312 US 714; 61 S Ct 728; 85 L Ed 1145 (1941), and *Deputy v DuPont,* 308 US 488; 60 S Ct 363; 84 L Ed 416 (1940), and applied the so-called "goods and services" test, which asks whether the taxpayer held himself out as offering any goods or services to others.

On July 27, 1983, the Tax Tribunal vacated the 1982 judgment. Now relying on *Ditunno v Comm'r,* 80 TC 362 (1983), the Tax Tribunal concluded that a broader "facts and circumstances" test should be applied in ascertaining whether a person engages in a "trade or business" for purposes of the business loss deduction. Since the facts of *Ditunno* were virtually identical to plaintiff's gambling activity and the *Ditunno* court held that the taxpayer's gambling activity was a "trade or business," the Tax Tribunal concluded that plaintiff was also engaged in a "trade or business," allowing plaintiff to claim his gambling losses as business deductions and receive his claimed refunds for the years 1979 through 1982.

In 1983, plaintiff's wagering produced winnings of $388,445 and losses of $383,166. In January,

1984, plaintiff filed his 1983 MI-1040 consistent with the Tax Tribunal's July 27, 1983, opinion and claimed a refund of $6,892, which is the primary subject of this appeal. Defendant mailed plaintiff notice that his refund, as well as all refunds involving professional gamblers, was being held in abeyance. This was because a recent decision of the Second Circuit Court of Appeals, *Gajewski v Comm'r of Internal Revenue,* 723 F2d 1062 (CA 2, 1983), cert den — US —; 105 S Ct 88; 83 L Ed 2d 35 (1984), had rejected the "facts and circumstances" test and a similar case, *Estate of Cull v Comm'r of Internal Revenue,* 746 F2d 1148 (CA 6, 1984), cert den — US —; 105 S Ct 2701; 86 L Ed 2d 717 (1985), was pending in the Sixth Circuit Court of Appeals.

On September 27, 1984, plaintiff commenced the instant action in the Court of Claims, asserting that, since the IRS had not chosen to delay paying refunds to professional gamblers for tax year 1983, defendant likewise should not delay. Approximately one month later *Cull* was decided. The *Cull* court, relying on Justice Frankfurter's concurring opinion in *Deputy v DuPont, supra,* held that the "goods and services" test was the minimum standard for establishing a taxpayer's involvement in a "trade or business" and was clearly in accord with those cases setting forth a broader "facts and circumstances" test. The taxpayer in *Cull* was an habitual race track bettor as well as an employee of various race tracks. The *Cull* court found that the taxpayer was not engaged in a "trade or business" within the meaning of 26 USC 62(1).

Defendant, relying on *Cull,* filed a motion for summary disposition under MCR 2.116(C)(8) and (10), claiming that *Cull* was on point with this case. The Court of Claims denied summary disposition to defendant and granted judgment to plain-

tiff under MCR 2.116(I)(2), ruling that *Cull* could not be retroactively applied to plaintiff's 1983 claim of refund.

On appeal, defendant asserts that the trial court erred in refusing to apply the "goods and services" test of *Cull* to the instant case. Plaintiff, on the other hand, argues that the "goods and services" test is not controlling here, and that the "facts and circumstances" test set forth in *Ditunno* applies. There is at present a split of authority among the various circuits as to which test should be used to determine whether a professional gambler is engaged in a "trade or business" within the meaning of the business loss deduction statute, 26 USC 62(1). Compare *Cull, supra,* and *Gajewski, supra,* with *Groetzinger v Comm'r of Internal Revenue,* 771 F2d 269 (CA 7, 1985), and *Nipper v Comm'r of Internal Revenue,* 47 TCM (CCH) 136 (1983), aff'd in an unpublished per curiam order, 746 F2d 843 (CA 11, 1984). The issue is now before the United States Supreme Court. *Groetzinger, supra,* cert gtd — US —; 106 S Ct 1456; 89 L Ed 2d 714 (1986).

We are satisfied that it is unnecessary to decide whether the *Cull* or the *Ditunno* standard applies in this case. Assuming that the *Ditunno* standard is dispositive, we would affirm the decision of the trial court as reaching the right result for the wrong reason. See, e.g., *Warren v Howlett,* 148 Mich App 417, 426; 383 NW2d 636 (1986). Assuming that the *Cull* standard controls, we agree with the well-reasoned opinion of the trial court:

> *Cull* was decided in October, 1984, ten months after the close of the tax period here at issue. Consider what must have been plaintiff's, an individual taxpayer's, reasonable understanding of his tax liability prior to the *Cull* ruling. During 1983, there was considerable uncertainty as to the circumstances under which full-time gambling could

be considered a trade or business. Conflicting judicial decisions and rendered § 62 of the Internal Revenue Code, incorporated by reference in the Michigan Income Tax Act, MCLA 206.2; MSA 7.557(102) ambiguous. Yet the weight of recent authority in 1983 favored a determination that plaintiff *was* engaged in a trade or business. *Ditunno v Commissioner,* 80 TC 362 (1983), *Nipper v Commissioner,* 47 TCM 136 (1983), *Cull v Commissioner,* 45 TCM 691 (1983).

Moreover, in May, 1982, plaintiff had received a letter from the IRS district director, informing him that his 1980 federal income tax return, claiming his gambling losses as business deductions, had been audited and was accepted as filed. Since the IRS had approved his deductions in computing his adjusted gross income, and since he was required to use the same adjusted gross income figure on his Michigan return, plaintiff's expectation that his 1983 business deductions were also proper under Michigan law was certainly reasonable. This expectation was supported by language of the Michigan Income Tax Act, itself:

"(2) Any term used in this act shall have the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes unless a different meaning is clearly required. Any reference in this act to the internal revenue code shall include other provisions of the laws of the United States relating to federal income taxes.

"(3) It is the intention of this act that the income subject to tax be the same as taxable income as defined and applicable to the subject taxpayer in the internal revenue code, except as otherwise provided in this act." MCL 206.2; MSA 7.557(102).

The expectation of consistent treatment was then further buttressed by the Tax Tribunal's decision of July 27, 1983, *supra,* which followed the recent trend in U. S. Tax Court decisions.

In light of this state of the law, the department's action, delaying processing of plaintiff's 1983 re-

turn pending future direction from the federal appellate court seems patently unfair. Contrary to the approach taken by the IRS, extending to taxpayers the benefit of the doubt until the definition of "trade or business" is finally settled either by Congress or the U. S. Supreme Court, the department's action offends well-established principles of tax law construction. The Michigan Constitution provides, "Every law which imposes, continues or revises a tax shall succinctly state the tax." Const 1963, art 4, § 32. Taxing statutes which are ambiguous are to be construed liberally in favor of the taxpayer and against the government. *Ford Motor Co v State Tax Commissioner,* 400 Mich 499; 255 NW2d 608 (1977), *Bechtel v Department of Treasury,* 128 Mich App 324; 340 NW2d 297 (1983). They should be interpreted in accordance with the experience and understanding of those who are expected to use and interpret them. *Production Credit Association of Lansing v Department of Treasury,* 404 Mich 301; 273 NW2d 10 (1978). The factual situation to which a taxing law is being applied should be viewed in a light of realism and practicality. *Travis v Commissioner of Internal Revenue,* 406 F2d 987 (CA 7, 1969).

Applying these rules to the instant case, the court must conclude that in 1983, the meaning of "trade or business" was uncertain. Even the taxing authorities and courts across the country had been unable to agree on a definition. Construing the language in accordance with the experience and understanding of taxpayers like plaintiff, in light of the guidance provided in 1983, and resolving any doubt in favor of plaintiff, the court holds that, for purposes of his 1983 Michigan income tax return, plaintiff must be deemed to have been engaged in the trade or business of gambling. The clarification finally provided by the Sixth Circuit Court in *Cull v Commissioner of Internal Revenue* offered plaintiff no guidance in 1983, when he was ordering his financial affairs. The department's attempt to apply the *Cull* standard retrospectively is clearly improper.

We find unpersuasive defendant's contention that the Court of Claims erroneously characterized the state of the law regarding what constitutes a "trade or business" as uncertain or ambiguous; the above-noted split of judicial opinion on the question and the history of this case belie any claim that the issue is well settled. Similarly, we cannot agree with defendant that the court "egregiously err[ed]" in applying considerations of fairness to the instant case. If there is no decision of the U. S. Supreme Court and the federal courts disagree on the interpretation of a federal act, the courts of Michigan may adopt a view which appears most appropriate under the circumstances. See *Cook v Detroit*, 125 Mich App 724, 730; 337 NW2d 277 (1983). Under these circumstances, we find no error in the decision of the trial court.

Affirmed.