GRANTHAM v GRANTHAM

Docket No. 57250. Submitted November 9, 1981, at Lansing.—Decided July 12, 1982.

Plaintiff, Kyong Sun Grantham, now Kyong Sun Loy, and defendant, Roy C. Grantham, were divorced in the Shiawassee Circuit Court. The friend of the court petitioned the court, requesting that the judgment be amended to change the custody of the retarded minor child of the parties from plaintiff to the Department of Social Services. The court, Peter J. Marutiak, J., granted the petition. DSS appealed. *Held:*

The trial court erred. While the Social Welfare Act provides for DSS to accept custody of disadvantaged children, the prescribed procedure is by commitment by the juvenile division of the probate court. DSS has no authority to accept custody of children committed to it by the circuit court.

Reversed.

1. STATUTES — JUDICIAL CONSTRUCTION.

It is appropriate to consider the legislative intent as expressed in the title of a statute in interpreting its legislative intent.

2. COURTS — INFANTS — SOCIAL SERVICES.

A circuit court should not commit a child to the custody of the Department of Social Services, because the department has no power to accept custody of children thus committed.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Janice Meija* and *Ronald W. Carlson,* Assistants Attorney General, for the Department of Social Services.

*Lance A. Fertig,* Friend of the Court.

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes §§ 97, 98, 145, 146.
[2] [No reference]

Before: M. J. KELLY, P.J., and D. E. HOLBROOK, JR., and N. J. KAUFMAN, JJ.

M. J. KELLY, P.J. Defendant Michigan Department of Social Services (DSS) appeals a trial court order awarding custody of Donald Adam Grantham (Adam) to DSS until Adam attains the mental age of 18 years.

Adam is a 16-year-old youth who is mentally handicapped, possessing a mental age of approximately 2 to 3 years. On September 17, 1973, Adam's parents were divorced and custody of Adam was given to his mother, who is the plaintiff in this case. Shortly after the divorce, a petition was filed in the Shiawassee County Probate Court requesting that Adam be made a temporary ward of the court under the Michigan children's institute act, MCL 400.201 *et seq.;* MSA 25.381 *et seq.* On December 4, 1973, the probate judge entered an observation order and Adam was placed at the Institute of Logopedics in Wichita, Kansas. Pursuant to MCL 400.203; MSA 25.383, the probate court extended the observation order for several 90-day periods. Although the last extension was dated August 3, 1976, the probate court did not dismiss the petition until June 18, 1980, at which time Adam was returned home to his mother's care.

In December, 1980, the Shiawassee County Friend of the Court filed a petition in the Shiawassee County Circuit Court requesting that the judgment of divorce be amended to change custody of Adam to DSS. Although DSS opposed the petition, the circuit court awarded custody to it on December 18, 1980. A written order was entered on April 1, 1981, and DSS's motion for rehearing was denied on April 14, 1981. DSS appeals the custody order as of right, GCR 1963, 806.1.

Defendant argues that it can only exercise those powers conferred upon it by law. According to DSS, there is no statutory provision which authorizes it to accept children who are mentally handicapped. Plaintiff counters by arguing that MCL 400.14(1)(g); MSA 16.414(1)(g) imposes a duty upon the DSS to assist the circuit court in placing Adam in an appropriate program.

MCL 400.14(1)(g); MSA 16.414(1)(g) reads:

"(1) The state department shall have and be vested with the following additional powers and duties:

* * *

"(g) To assist other departments, agencies, and institutions of the federal and state governments, when so requested, in performing services in conformity with the purposes of this act. The director shall act as certifying agent for federal departments or agencies in determining eligibility of applicants for aid or service rendered by those departments or agencies. The rules of the state departments under this subsection shall be binding upon the county departments of social services."

This particular provision of the statute has never been interpreted.

In *Pittsfield Charter Twp v City of Saline,* 103 Mich App 99, 104-105; 302 NW2d 608 (1981), the rules of statutory construction were concisely stated:

"In construing this statute, we are governed by traditional rules of construction. Thus, if the statute is unambiguous on its face, we will avoid further interpretation or construction of its terms. *Detroit v Redford Twp,* 253 Mich 453; 235 NW 217 (1931). However, if ambiguity exists, it is our duty to give effect to the intention of the Legislature in enacting the statute. *Melia v Employment Security Comm,* 346 Mich 544; 78 NW2d 273 (1956). To resolve a perceived ambiguity, a

court will look to the object of the statute, the evil or mischief which it is designed to remedy, and will apply a reasonable construction which best accomplishes the statute's purpose. *Bennetts v State Employees Retirement Board,* 95 Mich App 616; 291 NW2d 147 (1980), *Stover v Retirement Board of St Clair Shores,* 78 Mich App 409; 260 NW2d 112 (1977). Also, ambiguous statutes will be interpreted as a whole and construed so as to give effect to each provision and to produce an harmonious and consistent result. *In re Petition of State Highway Comm,* 383 Mich 709; 178 NW2d 923 (1970), *People v Miller,* 78 Mich App 336; 259 NW2d 877 (1977). Further, specific words in a given statute will be assigned their ordinary meaning unless a different interpretation is indicated. *Oshtemo Twp v Kalamazoo,* 77 Mich App 33, 39; 257 NW2d 260 (1977), MCL 8.3a; MSA 2.212(1)."

When determining the legislative intent, we will look to the title of the act. *Michigan Consolidated Gas Co v Dep't of Treasury,* 72 Mich App 426, 443; 250 NW2d 85 (1976), *aff'd* sub nom *Production Credit Ass'n of Lansing v Dep't of Treasury,* 404 Mich 301; 273 NW2d 10 (1978). The title to the Social Welfare Act, MCL 400.1 *et seq.;* MSA 16.401(1) *et seq.,* states:

"An ACT to protect the welfare of the people of this state; to provide general relief, hospitalization, infirmary and medical care to poor or unfortunate persons; to provide for compliance by this state with the provisions of the social security act; to provide protection, welfare and services to aged persons, dependent children, the blind, and the permanently and totally disabled; to administer programs and services for the prevention and treatment of delinquency, dependency and neglect of children; to create a state department of social services; to prescribe the powers and duties of the department; to provide for the interstate and intercounty transfer of dependents; to create county and district departments of social services; to create within

certain county departments, bureaus of social aid and certain divisions and offices thereunder; to prescribe the powers and duties of the departments, bureaus and officers; to provide for appeals in certain cases; to prescribe the powers and duties of the state department with respect to county and district departments; to make an appropriation; and to prescribe penalties for the violation of the provisions of this act."

The act's express purpose is to provide protection, welfare, and services for dependent children and totally disabled persons.

While the purpose of the statute appears to include accepting custody of disadvantaged children like Adam, other sections of the statute establish specific procedures whereby children are committed to DSS's custody. MCL 400.115b; MSA 16.490(25b) provides that DSS will assume responsibility for children committed to it by the juvenile division of the probate court under the Youth Rehabilitation Services Act, MCL 803.301 *et seq.;* MSA 25.399(51) *et seq.,* and the children's institute act, MCL 400.201 *et seq.;* MSA 25.381 *et seq.* In view of these specific provisions, we do not view the general language of MCL 400.14(1)(g); MSA 16.414(1)(g) as giving DSS the power to accept custody of children from the circuit court. *William's Delight Corp v Harris,* 87 Mich App 202, 208; 273 NW2d 911 (1978). Since officials of DSS may only exercise powers which are conferred upon them by law, the trial court erred when it ordered DSS to take custody of Adam. See *Roxborough v Michigan Unemployment Compensation Comm,* 309 Mich 505, 510; 15 NW2d 724 (1944). The trial court's award of custody is reversed.

Reversed.